IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| ATLANTIC SPECIALTY | ) | |
|---|---|---|
| INSURANCE COMPANY, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | CIVIL ACTION NO. 13-458-CG-N |
| | ) | |
| MR. CHARLIE ADVENTURES, | ) | |
| LLC and KIM P. KORNEGAY, | ) | |
| | ) | |
| Defendants. | ) | |

**ORDER**

This matter is before the court on Defendants' motion to alter or amend pursuant to FED. R. CIV. PROC. 59(e) (Doc. 78), Plaintiff's opposition (Doc. 83), and Defendants' reply (Doc. 84). For the reasons stated below, Defendants' motion to alter or amend is due to be denied.

**BACKGROUND**

This case involves an insurance claim for damage to Defendants' yacht, the "Mr. Charlie," and its contents by a fire that occurred on March 3, 2013. Plaintiff, Atlantic Specialty Insurance Company ("Atlantic") filed its complaint seeking a declaration that it does not owe coverage for the fire and Defendants asserted counterclaims for breach of contract and bad faith. (Docs. 1, 16).

Atlantic's experts, Guy Plaisance and Gary Jones, concluded that the fire originated in the engine compartment in the vicinity of the aft end of the starboard

engine and resulted from the seawater intake screen for the starboard strainer being restricted by marine growth. (Docs. 34-2, 35-6). Atlantic denied the insurance claim based on the reports of Jones and Plaisance. Atlantic concluded that coverage was excluded by the policy because the loss results from "marine life" and/or Defendants' "failure to maintain the covered yacht in good condition and repair."

Defendants moved to exclude the opinions of Guy Plaisance and Gary Jones under Rules 403 and 702. (Docs. 34 & 35). This Court granted Defendants' motions to exclude, finding that Plaisance and Jones' determination of the cause of the fire did not stem from a reliable methodology, sufficient factual basis, and reliable application of the methodology to the facts. (Doc. 75). The Court found, after reviewing Mr. Plaisance's qualifications, that he had sufficient experience to offer opinion testimony on the cause and origin of the fire, (Doc. 75, p. 6), but that some of the data Plaisance relied upon was inaccurate or unreliable and he was unsure where some of his information came from.[1] As such, the Court found that Plaisance had failed to fully support his conclusion that the fire was caused by the screen being occluded by marine growth. (Doc. 75, p. 10). Because Jones relied on the conclusions of Plaisance and the information Plaisance relied upon and did not

---

[1] For instance, Plaisance confused data from one water intake screen for another, relied on opinions of an employee for a company that manufactures the screens without knowing the employee's qualifications, relied on calculations using data from a different engine, and was not sure who told him that the exhaust gas could get hot enough to burn the hose and gas pipe without overheating the engine.

complete additional inspections or tests that might have proved or disproved his theory, Jones' opinion was also found to be unreliable. (Doc. 75, pp. 12-13).

On November 7, 2014, this Court granted summary judgment in favor of Defendants on their claim for breach of contract, but granted summary judgment in favor of Atlantic as to Defendants' counterclaim for bad faith. (Doc. 76). Specifically, the Court found that because the opinions of Atlantic's experts had been excluded as unreliable, Atlantic had no reliable evidence as to the cause of the fire and could not support its contention that the cause of the fire was excluded by the policy of insurance. (Doc. 76, p. 9). As to Defendants' bad faith claim, the Court discussed the elements of such a claim and found that Defendants' claim failed because Defendants failed to show that those elements were met. The Court explained that the evidence showed that Atlantic had an arguable reason to deny the claim and there was no evidence that Atlantic knew there was no arguable reason. The Court reasoned as follows:

> Atlantic reports that it diligently investigated the claim and relied on the opinions of its experts, Guy Plaisance and Gary Jones. Although this court has now excluded those opinions, there is no evidence Atlantic knew that the opinions should not be relied upon. "To defeat a bad faith claim, the defendant does not have to show that its reason for denial was correct, only that it was arguable." Liberty Nat. Life Ins. Co. v. Allen, 699 So.2d 138, 143 (Ala. 1997). Accordingly, at the time of the denial Atlantic appears to have had an arguable reason to deny the claim.

(Doc. 76, p. 10). The Court also stated that "there is no evidence that Atlantic or its claim agents had any reason to disbelieve the experts when they ultimately opined that the cause of the fire was marine growth on the screens." (Doc. 76, p. 15). The

3

Court also discussed at length three cases relied upon by Defendants to support their contention that Atlantic could not rely on its expert reports as an arguable reason for denial: White v. State Farm & Cas. Co., 953 So.2d 340, 350 (Ala. 2006); Alfa Mut. Fire Ins. Co. v. Thomas, 738 So.2d 815, 822-23 (Ala. 1999); and Livingston v. Auto Owners Ins. Co., 582 So.2d 1038, 1042-43 (Ala. 1991). (Doc. 76, pp. 10-14). This Court found that these three cases did not apply to this case.

## DISCUSSION

Defendants move to alter or amend this Court's Order of November 7, 2014, granting summary judgment in favor of Atlantic as to Defendants' counterclaim for bad faith (Doc. 76). Specifically, Defendants request this Court to reconsider its interpretation of the law of bad faith and the evidentiary record because Defendants contend that the record provides substantial evidence that Atlantic knew its experts' opinions should not have been relied upon, that Atlantic had reason to disbelieve the opinions of the experts, and that Atlantic knew there was no reason to deny the claim.

"'In the interests of finality and conservation of scarce judicial resources, reconsideration of an order is an extraordinary remedy and is employed sparingly.'" Garrett v. Stanton, 2010 WL 320492, *2 (S.D. Ala. 2010) (quoting Gougler v. Sirius Products, Inc., 370 F.Supp.2d 1185, 1189 (S.D. Ala. 2005); see also Spellman v. Haley, 2004 WL 866837, *2 (M.D. Ala. Feb. 22, 2002) ("litigants should not use motions to reconsider as a knee-jerk reaction to an adverse ruling"). "A motion to reconsider is not a vehicle 'to relitigate old matters, or to raise arguments or present

4

evidence that could have been raised prior to entry of judgment.'" Id. (quoting Exxon Shipping Co. v. Baker, 554 U.S. 471, 128 S.Ct. 2605, 2617 n. 5, 171 L.Ed.2d 570 (2008). "It is… improper to utilize a motion to reconsider to ask a district court to rethink a decision once made, merely because a litigant disagrees" because "[i]magine how a district court's workload would multiply if it was obliged to rule twice on the same arguments by the same party upon request." Garrett, 2010 WL 320492 at *2 n. 1.

Defendants move for reconsideration under Rule 59(e). However, because this court's order granting summary judgment is not a final order or judgment, the decision whether to reconsider the order must be analyzed under the stricter provision of 60(b), rather than 59(e). See FED. R. CIV. P. 59(e); Bayshore Ford Truck Sales, Inc., 471 F.3d 1233, 1260–61 (11th Cir. 2006) (grant of partial summary judgment is an interlocutory order); Toole v. Baxter Healthcare Corp., 235 F.3d 1307, 1315 (11th Cir. 2000) (an interlocutory order is not subject to the limitations of Rule 59). Federal Rule of Civil Procedure 60(b) provides that a court may relieve a party from a final judgment or order for the following reasons:

> (1) mistake, inadvertence, surprise, or excusable neglect;
>
> (2) newly discovered evidence which by due diligence could not have been discovered in time to move for a new trial under Rule 59(b);
>
> (3) fraud (whether heretofore denominated intrinsic or extrinsic), misrepresentation, or other misconduct of an adverse party;
>
> (4) the judgment is void;
>
> (5) the judgment has been satisfied, released, or discharged, or a prior judgment upon which it is based has been reversed or otherwise

5

vacated, or it is no longer equitable that the judgment should have prospective application; or

(6) any other reason justifying relief from the operation of the judgment.

Generally, a "motion to reconsider is only available when a party presents the court with evidence of an intervening change in controlling law, the availability of new evidence, or the need to correct clear error or manifest injustice." <u>Gipson v. Mattox</u>, 511 F. Supp. 2d 1182, 1185 (S.D. Ala. 2007). The only provisions of Rule 60(b) under which the court can determine that Defendant could be seeking reconsideration are 60(b)(1), and 60(b)(6).

**A. Rule 60(b)(1)**

Rule 60(b)(1) permits a court to relieve a party from a final judgment, order or proceeding for "mistake, inadvertence, surprise, or excusable neglect." Rule 60(b)(1) can be used "to permit the district court to reconsider and correct its own errors, particularly if they are of an obvious nature amounting to little more than clerical errors." <u>Fackelman v. Bell</u>, 564 F.2d 734, 736 (5th Cir. 1977). "[S]ome courts have applied 60(b)(1) to theories of mistake of law when the motion was filed before the time to file a notice of appeal had expired." <u>Wendy's Intern., Inc. v. Nu-Cape Const., Inc.</u>, 169 F.R.D. 680, 687 (M.D. Fla. 1996) (citing <u>Morris v. Adams-Millis Corp.</u>, 758 F.2d 1352, 1358 (10th Cir. 1985)). "However such relief is available only for obvious errors of law and limited to 'perfunctory correction." <u>Id.</u> (citing <u>Alvestad v. Monsanto Co.</u>, 671 F.2d 908, 912-13 (5th Cir.), <u>cert. denied</u>, 459 U.S. 1070 (1982)); <u>see also</u> <u>Nisson v. Lundy</u>, 975 F.2d 802, 806 (11th Cir. 1992) ("where a district

court's mistake was 'clear on the record' and involved a 'plain misconstruction of the law..., compelling policies of basic fairness and equity reflected by 60(b)' may mandate amendment to 'conform its judgment to the law.'" (citations omitted)). In this case, the court finds that there were not any facially obvious errors of law in the November 7, 2014 order. For the most part, Defendants' motion reiterates the arguments previously raised in support of their motion for summary judgment and in response to Atlantic's motion for summary judgment. Defendants assert that Atlantic had no legitimate or arguable reason for denying the claim and thus, that Atlantic was not entitled to summary judgment on Defendants' claim of bad faith. Defendants assert that to overcome a motion for summary judgment they need only show that they are entitled to a directed verdict on the underlying claim for breach of contract.

In their briefs submitted on summary judgment Defendants cited three cases to support their contention that Atlantic cannot rely on its expert reports as an arguable reason for denial: White v. State Farm & Cas. Co., 953 So.2d 340, 350 (Ala. 2006); Alfa Mut. Fire Ins. Co. v. Thomas, 738 So.2d 815, 822-23 (Ala. 1999); and Livingston v. Auto Owners Ins. Co., 582 So.2d 1038, 1042-43 (Ala. 1991). This court found that none of these cases applied to this case. Defendants now cite several more cases to support their directed verdict argument: Nat. Sav. Life Ins. Co. v. Dutton, 419 So.2d 1357, (Ala.1982); Lord v. Allstate Ins. Co., 2014 WL 4686441 (N.D. Ala. Sept. 17, 2014); Intercontinental Life Ins. v. Lindblom, 571 So.2d 1092 (Ala. 1990), *vacated on other grounds*, 499 U.S. 956 (1991); Continental

7

Assur. Co. v. Kountz, 461 So.2d 802 (Ala. 1984); and National Sec. Fire & Cas.v. Coshatt, 690 So.2d 391 (Ala. Civ. App. 1996). "A motion for reconsideration should not be used as a vehicle to present authorities available at the time of the first decision or to reiterate arguments previously made: [It is an improper use] of the motion to reconsider to ask the Court to rethink what the Court ... already thought through—rightly or wrongly[.]" Z.K. Marine Inc. v. M/V Archigetis, 808 F.Supp. 1561, 1563 (S.D. Fla. 1992) (citations omitted). Defendants cannot rely on cases that do not represent an intervening change in controlling law and that could have been cited in their prior opposition to summary judgment. Mantilla v. U.S. Dept. of State, 2013 WL 424433, *4 (S.D. Fla. Feb. 1, 2013). As this court has stated previously: a motion to reconsider "may not be used as a vehicle to inject new arguments into the underlying motion, or to submit evidence previously available but not properly presented on the underlying motion." Bell v. Integrated Health Services, Inc. 2007 WL 433561, *1 (S.D. Ala. Feb. 5, 2007) (citation omitted). The additional case law submitted by Defendants does not demonstrate that summary judgment on the bad faith claim was an obvious error that requires perfunctory correction. Moreover, the court is not persuaded that if Defendants had cited the additional cases at the summary judgment stage that a different result would have been reached.

While the newly cited cases all generally discuss the requirements for establishing a prima facie case of bad faith refusal to pay, the facts of those cases are not analogous to the instant case. Defendants' arguments overstate the

8

significance of a prima facie case.  Establishing a prima facie case does not necessarily mean that the claim survives summary judgment.  A "prima facie case" refers to "[t]he establishment of a legally required rebuttable presumption." Black's Law Dictionary 1209 (7th ed. 1999).  It is generally the minimum that must be shown for a claim to survive summary judgment.  But, once met, the presumption merely shifts the burden of production or persuasion to the opposing party.  The presumption can sometimes be overcome by the opposing party.

In the instant case, the court found that Defendants were entitled to judgment on their breach of contract claim.  The elements for a breach of contract claim are: "(1) the existence of a valid contract binding the parties in the action, (2) [plaintiff's] own performance under that contract, (3) the defendant's nonperformance, and (4) damages." Southern Med. Health Sys., Inc. v. Vaughn, 669 So.2d 98, 99 (Ala. 1995) (citations omitted).  These four elements must generally be established to maintain a claim for bad faith denial.  However, the tort of bad-faith refusal to pay a claim has additional elements:

> (a) a breach of insurance contract, (b) the refusal to pay claim, (c) the absence of arguable reason, (d) the insurer's knowledge of such absence—with a conditional fifth element: "(e) if the intentional failure to determine the existence of a lawful basis is relied upon, the plaintiff must prove the insurer's intentional failure to determine whether there is a legitimate or arguable reason to refuse to pay the claim."

EMCASCO Ins. Co. v. Knight, 2014 WL 5020044, *15 (N.D. Ala. Oct. 7, 2014) (quoting National Sec. Fire & Cas. Co. v. Bowen, 417 So.2d 179, 183 (Ala. 1982)). The first two elements of a bad faith claim are necessarily met when the insured is entitled to judgment on a breach of contract claim.  However, judgment on a breach

9

of contract claim does not demonstrate that the insurer had no arguable reason or knowledge that there was no arguable reason at the time it made the decision to deny the claim. Nor does it demonstrate that the insurer intentionally failed to investigate whether there was a legitimate reason to deny the claim.

Atlantic proffered that it had an arguable reason to deny the claim because it relied on the opinions of hired experts. The experts grappled with causation issues throughout their investigation, but ultimately arrived at their conclusions and advised Atlantic. This court found that the experts had the experience and background to give expert opinions on the cause and origin of the fire and there was no evidence that Atlantic knew or should have known that those opinions should not have been relied upon. Accordingly, the presumption was overcome, and there being no evidence to show the absence of arguable reason which is a required element of a bad faith claim, summary judgment was proper for Atlantic.

The <u>Dutton</u> case cited by Defendants found that "[o]rdinarily, if the evidence produced by either side creates a fact issue with regard to the validity of the [insurance] claim and, thus, the legitimacy of the denial thereof, the [bad faith] tort claim must fail and should not be submitted to the jury." <u>Dutton</u>, 419 So.2d at 1362. The <u>Dutton</u> court stated that to make out a <u>prima facie</u> case of bad faith refusal to pay, the insured must show that he is entitled to a directed verdict on the contract claim. <u>Id.</u> The court also stated that "[w]hether an insurance company is justified in denying a claim under a policy must be judged by what was before it at the time the decision is made." <u>Id.</u> Thus, although this Court found that Defendants have

10

demonstrated their breach of contract claim as a matter of law, the Dutton holding merely shows that such facts are necessary to establish a prima facie case of bad faith refusal to pay. Where, as here, the insurance company had an arguable reason to deny the claim at the time of the decision, the bad faith claim will still fail.

The Lord case generally discussed the directed verdict standard. The court stated that the plaintiff could overcome summary judgment for the insurer on a "normal" bad faith claim only by showing that he is entitled to judgment as a matter of law on the underlying breach of contract claim. Lord, 2014 WL 4686441 at *10. The Lord court stated that bad faith could also exist "where the insurer intentionally or recklessly fails to properly investigate whether a claim is covered." Id. The court further stated that in such reckless bad faith claims, negligent failure to investigate is not enough; there must be evidence from which a jury can infer an intentional or reckless failure to properly investigate. Id. at *11. However, the parties in Lord did not move for summary judgment of the contract claim. Id. at *10. The court ultimately found that there was an issue of fact regarding when the insurance company denied the insurance claim and whether it had a reasonably legitimate or arguable basis for denying it at the time of the denial. In Lord, the insurance company had agreed to pay for damage sustained to the insured's house from a tornado, but denied a portion of the claim on the basis that the structural damage was not caused by the tornado, but by settling. The insurance company had two adjustors inspect the damaged house who both found that the damage in

11

question was not caused by wind. Id. at *19. However, the adjustors acknowledged that an engineer should inspect the house and offer an opinion and requested that an engineer be assigned to the claim. Id. The insurance company refused to hire an engineer. Id. There was also evidence provided to the insurer that prior to the tornado the house was in good condition and did not have any of the structural damage that was obvious after the storm. Id. Thus, the court found that there was a question of fact whether the information possessed by the insurance company constituted a reasonably legitimate or arguable basis for refusing to pay for the structural damage. In the instant case, unlike the Lord case, Atlantic hired experts to determine the cause of the damage. At the time Atlantic denied the contract claim it had the expert reports of Plaisance and Jones. The experts had concluded that the fire resulted from the seawater intake screen for the starboard strainer being restricted by marine growth. Unlike the Lord case, there is no evidence here that Atlantic or its claim agents had any reason to disbelieve the experts at that time. There were questions about the cause of the fire during the investigation, but the experts ultimately concluded that the cause of the fire was marine growth on the intake screen. Although this Court later excluded those opinions, there is no evidence that Atlantic knew or should have known that they were unreliable at the time it decided to deny the insurance claim.

In Lindblom, the Supreme Court of Alabama pointed to case law that held that a prima facie case of "normal" bad faith refusal to pay an insurance claim requires that "the proof offered must show that the plaintiff is entitled to a directed

12

verdict on the contract claim." 571 So.2d at 1097. The Lindblom court, however, found that in extraordinary cases, where the evidence showed that the insurer had intentionally failed to determine whether there was a lawful basis for denying the claim, that showing could support an inference of bad faith. Id. at 1098. The court concluded that the insurance company's effort to investigate the claim was "wholly insufficient to amount to an investigation into the basis for the denial of payments." Id. at 1099. The "intentional failure to investigate whether there was a valid reason to deny the claim amount[ed] to an intentional failure to determine whether there was any lawful basis for denying the claim and creat[ed] the inference of bad faith." Id. As such, the court found that even if the insured was not entitled to a directed verdict, the insured could still maintain her bad faith claim. Id. The Lindblom court concluded that the directed verdict doctrine did not apply to that case. Id. In the instant case, unlike the Lindblom case, Atlantic hired two experts to investigate the claim. The Court found that these experts had the experience and background to give expert opinions on the cause and origin of the fire. Because the evidence shows that there were problems with the experts' investigation, their opinions were struck by this Court. However, the evidence does not show that Atlantic knew they should not rely on the experts' opinions or that Atlantic intentionally failed to investigate the claim.

The Kountz court found that the evidence at trial showed that the plaintiff was entitled to a directed verdict on her breach of contract claim. 461 So.2d at 807. The Kountz court further found that there was sufficient evidence that the

insurance company had failed to determine whether there was a lawful basis for denying the plaintiff's claim. Id. at 808. The Plaintiff in Kountz had received a blow to the mouth during a robbery attempt. Id. at 803. The plaintiff's dentist determined that she had chronic periodontal disease, but that eight of the plaintiff's teeth needed to be extracted because of the blow to plaintiff's mouth. Id. at 804. The insurance company denied plaintiff's claim for coverage on the basis that there was no evidence of an accidental injury and the hospital record listed "dental caries, and gum disorder" as the plaintiff's ailment. Id. at 808. However, the insurance company had been provided with the police report that described the assault and plaintiff's dentist had provided a form statement that the plaintiff had undergone oral surgery due to a mugging. Id. The insurance company did not contact plaintiff's dentist even though the dentist's statement invited the insurance company to contact him if more information was needed. The insurance company also did not have anyone with any dental expertise review the claim. Id. Unlike the insurance company in Kountz, Atlantic hired and relied on two experts to determine the cause of the fire in question. This case, like the above cases cited by Defendants, is simply not analogous to the instant case.

Lastly, Coshatt involved a home that was damaged by a snowstorm. 690 So.2d at 392. An agent for the insurance company spoke to the homeowners several times and advised them to make any necessary repairs, which they did. Id. The insurance agent had discussed the claim with his supervisors and told them that the claim was due to be paid. Id. An independent adjuster, hired by the insurance

14

company, inspected the repairs and recommended payment of the claim. Id. However, the insurance company denied the claim on the ground that the homeowners did not allow the insurance company to investigate the cause and extent of the loss. Id. The court found that the trial court did not err in granting a directed verdict in favor of the homeowners as to their breach of contract claim. Id. at 394. The court also found that the trial court had correctly submitted the bad faith claim to the Jury. The insurance company's argued that the bad faith claim should not have been submitted to the jury because the home owners were not entitled to a directed verdict on their breach of contract claim. Id. at 395. The court found it was proper to submit the bad faith claim to the jury because the homeowners were entitled to a directed verdict and because there were a number of facts to support the inference that the insurance company had actual knowledge that it had no legitimate basis for denying the claim. Id. In the instant case, unlike the Coshatt case, Atlantic had an arguable reason for denying the claim and there is no evidence that at the time it denied the claim that Atlantic knew it had no legitimate basis to deny the claim.

Thus, even upon a thorough review of the cases cited by Defendants, the Court is not persuaded that its previous conclusions were in error. At the time Atlantic denied the claim, it had an arguable reason for doing so. Further, the undisputed evidence shows that Atlantic investigated the claim. Atlantic hired two knowledgeable and experienced experts to investigate the cause and origin of the fire and denied the claim based on the opinions of those experts. Defendants have

not cited, nor is this Court aware of, any cases that have held that because a court later excluded an expert's opinion, the insurer did not have an arguable reason to deny the claim at the time of the denial. Defendants admit that an insurer can have a debatable reason to deny a claim based on a debatable legal position that is later determined to be wrong, but Defendants deny that there are any other exceptions to the directed verdict rule. (Doc. 78, p. 4 n. 1 citing <u>Safeco Ins. Co. of America v. Sims</u>, 435 So.2d 1219 (Ala. 1983)). However, the <u>Sims</u> case cited by Defendants does not hold that such exceptions to the directed verdict rule are limited to debatable legal positions. The <u>Sims</u> Court stated that "exceptions to the 'directed verdict' rule will undoubtedly arise." <u>Id.</u> at 1225. The court merely offered an arguable legal position as one example where the insurer could be entitle to judgment on the bad faith claim even though the insured was entitled to a directed verdict on the breach of contract claim. As discussed above, the directed verdict rule provides a presumption and presumptions can be overcome.

Defendants also contend that there is evidence that Atlantic had reason to doubt the experts' conclusions. The Court disagrees. There is evidence that the experts had questions or issues during their investigation concerning the cause of the fire and that Atlantic was aware of some of the issues. However, questions and issues are what an investigation normally entails. That is why experts are hired to investigate and resolve issues. There is no evidence that Atlantic knew that the experts had made mistakes in their investigation or that the experts' final opinions should not be believed. Reliance on the experts' opinions proved to be a mistake,

but "[p]roof of mere negligence or mistake is not sufficient to support a claim of bad faith; there must be a refusal to pay, coupled with a conscious intent to injure." Peachtree Cas. Ins. Co., Inc. v. Sharpton, 2001 WL 286919, *5 (M.D. Ala. March 20, 2001) (citation omitted).

**B. Rule 60(b)(6)**

Under Rule 60(b)(6), a court may grant relief for "any other reason justifying relief from the operation of judgment." "[R]elief under this clause is an extraordinary remedy which may be invoked only upon a showing of exceptional circumstances." Crapp v. City of Miami Beach, 242 F.3d 1017, 1020 (11th Cir. 2001)(quoting Griffin v. Swim-Tech Corp., 722 F.2d 677, 680 (11th Cir.1984)). Even if a movant can persuade the Court that the circumstances are sufficiently extraordinary to warrant relief, whether to grant the relief is "a matter for the district court's sound discretion." Toole v. Baxter Healthcare Corp., 235 F.3d 1307, 1317 (11th Cir. 2000) (quoting Booker v. Singletary, 90 F.3d 440, 442 (11th Cir. 1996)).

In addition, 60(b)(1) and (b)(6) are mutually exclusive. Cavaliere v. Allstate Ins. Co., 996 F.2d 1111, 1115 (11th Cir. 1993). "Therefore, a court cannot grant relief under (b)(6) for any reason which the court could consider under (b)(1). Id. (quoting Solaroll Shade, 803 F.2d at 1133); see also Tansit Cas. Co. v. Security Trust Co., 441 F.2d 788, 792 (5th Cir. 1971) ("The reason for relief set forth in Rule 60(b)(1) cannot be the basis for relief under Rule 60(b)(6)."). Because Defendants'

17

contentions fit more naturally under Rule 60(b)(1), relief under (b)(6) is unavailable. See Cavaliere, 996 F.2d at 1115. Furthermore, this Court finds that there are no exceptional circumstances that warrant relief.

## CONCLUSION

For the reasons stated above, Defendants' motion to alter or amend pursuant to FED. R. CIV. PROC. 59(e) (Doc. 78), is **DENIED**.

**DONE** and **ORDERED** this 5th day of May, 2015.

/s/ Callie V. S. Granade
UNITED STATES DISTRICT JUDGE